**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

DON FAX, SR.,

                          **Plaintiff,**

    vs.                                                 1:14-cv-00530
                                                               (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**
_____

APPEARANCES:                                      OF COUNSEL:

**OFFICE OF PETER M. MARGOLIUS**      **PETER M. MARGOLIS, ESQ.**
7 Howard Street
Catskill, New York 12414
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **FERGUS J. KAISER, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Plaintiff commenced this action on May 6, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI"). *See* Dkt. No. 9, Administrative Transcript ("T."), at 16-38.

## II. BACKGROUND

Plaintiff's date of birth is August 21, 1969, and he was forty-three years old at the time of the administrative hearing. *See* T. at 42. Plaintiff received his high school diploma, and he completed one and one-half years of college. *See id.* at 45-46. Plaintiff's relevant work history indicates that he did not have any reported income between the years of 1997 and 2002. *See id.* at 150-56. In the year 2003, Plaintiff worked at the Friar Tuck Inn of the Catskill, Inc. and Kaz USA, Inc., and he continued his employment with Kaz USA, Inc. through 2005 where he was an assembly line worker. *See id.* at 47-51, 150-56. Plaintiff did not have any reported income between the years 2006 and 2012. *See id.* at 150-56. Plaintiff was incarcerated from December 18, 2009 through February 9, 2011. *See id.* at 157-58. Although the dates are not clear from his testimony, Plaintiff worked as a roofer "off the books" up until 2009. *See id.* at 46-47. Plaintiff claims that he did not work as a roofer after 2009 despite evidence in his medical records to the contrary. *See id.* at 47-48

On January 30, 2012, Plaintiff protectively filed an application for SSI, alleging a disability onset date of September 17, 2008. *See id.* at 159. Plaintiff claimed that his ability to work is limited by right knee injury, mental illness, neck injury, spine injury, and shoulder injury. *See id.* at 163. The application was initially denied on May 3, 2012. *See id.* at 84-89. Plaintiff requested a hearing, which was held on February 28, 2013 before Administrative Law Judge ("ALJ") Michelle S. Marcus. *See id.* at 39-79. The ALJ issued an unfavorable decision on July 3, 2013. *See id.* at 16-38.

The ALJ determined the following: (1) Plaintiff had not engaged in substantial gainful activity since January 30, 2012;[1] (2) Plaintiff has severe impairments of cervical disc disease – status post cervical decompression, discectomy and fusion, right cubital tunnel syndrome – status post ulnar nerve decompression, and left shoulder osteoarthritis with adhesive capsulitis; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment of 20 C.F.R. Part 404, Subpt. P, App. 1 ("listed impairment"); (4) Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with additional restrictions for his upper extremities and environment; (5) Plaintiff's RFC does not allow him to perform any of his past relevant work; and (6) there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform taking into consideration Plaintiff's age, education, work experience, and RFC. *See* T. at 16-38. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 30, 2012 through the date of the decision. *See id.* at 16-38.

Request for review by the Appeals Council was timely filed, and, on March 12, 2014, the request was denied, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-6, 11-12. Plaintiff commenced this action for judicial review of that decision by filing a complaint on May 6, 2014, *see* Dkt. No. 1, and both parties have now moved for judgment on the pleadings. *See* Dkt. Nos. 11, 12. Having reviewed the parties submissions and the administrative record, the Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A.    Standard of Review**

---

[1] At the hearing on February 28, 2013, Plaintiff amended the date that he claimed his disability began from September 17, 2008 to January 30, 2012. *See* T. at 53.

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The Court must examine the Administrative Transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (stating that the Court "would be derelict in our duties if we simply paid lip service to this rule, while shaping [the Court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Analysis**

4

On appeal to this Court, Plaintiff contends that the ALJ did not apply the correct legal standards when determining Plaintiff's RFC. *See* Dkt. No. 11. Specifically, Plaintiff argues that the ALJ did not properly apply the treating physician rule to Nurse Practitioner Miller's medical source statement and to one of Dr. Eromo's medical assessments. *See id.* For purposes of SSI, a plaintiff is disabled when he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). A plaintiff bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Berry*, 675 F.2d at 467. It is Plaintiff's first contention that the ALJ did not properly apply the treating physician rule to Nurse Practitioner Miller, his primary care provider. *See* Dkt. No. 11. According to

5

Plaintiff, Nurse Practitioner Miller opined in her December 14, 2012 medical source statement that Plaintiff could occasionally reach overhead and in all other directions with bilateral upper extremities and could only occasionally push and pull with both his upper extremities. *See id.* Plaintiff's RFC contains limitations of occasional use of the right upper extremity for reaching, handling, feeling, fingering, pushing, and pulling but allows for frequent use of the left upper extremity for the same activities. *See* T. at 24.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). Only "acceptable medical sources . . . can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p (stating that "[m]aking a distinction between 'acceptable medical sources' and medical sources who are not 'acceptable medical sources' facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source").

Acceptable medical sources are defined as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologist, but nurse practitioners and physician assistants are not included among the acceptable medical sources. *See Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a)). The opinions of a nurse practitioner can be considered when determining the severity of the claimant's impairment and ability to work but are not necessarily entitled to controlling weight. *See Genier*, 298 Fed. Appx. at 108 (stating that "while the ALJ is certainly free to consider the opinions of these 'other

6

sources' in making his [or her] overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician").

In this case, Nurse Practitioner Marilyn Miller is Plaintiff's primary care provider, and her records indicate that Plaintiff received medical treatment during the period of March 23, 2012 through February 14, 2013. *See* T. at 314-34. Nurse Practitioner Miller's medical care and treatment of Plaintiff included medication management for Plaintiff's complaints of chronic pain. *See id.* However, at each examination, Plaintiff's back is assessed as normal and his extremities are found to be unremarkable. *See id.* Further, Plaintiff's musculoskeletal systems are assessed and reported as normal gait and normal range of motion. *See id.* Nurse Practitioner Miller submitted a medical source statement on December 14, 2012, finding that Plaintiff can frequently lift up to twenty pounds because that was the limit set by Plaintiff's orthopedic surgeon. *See id.* at 303. Under the assessment entitled "USE OF HANDS," Ms. Miller indicated that Plaintiff's right and left hands could occasionally reach overhead, occasionally reach in other directions, and occasionally push or pull. *See id.* at 305.

As set forth above, the ALJ was not required to accord controlling weight to Nurse Practitioner Miller's medical source statement even if it was supported by clinical diagnostic techniques and consistent with other substantial evidence because a nurse practitioner is not an acceptable medical source. However, the ALJ engaged in an in-depth review of the medical records from Nurse Practitioner Miller including the medical source statement that was submitted. *See id.* at 16-38. The ALJ specifically noted that Plaintiff's musculoskeletal examinations by Nurse Practitioner Miller were always normal and unremarkable. *See id.* at 25. The ALJ also reviewed the left-sided nerve study that was performed on February 12, 2013, which revealed that Plaintiff did not have any significant abnormalities or definite evidence of either peripheral

neuropathy or left cervical radiculopathy. *See id.* At the hearing, Plaintiff provided testimony to the ALJ that his left arm does not cause him any difficulties. *See id*. at 62. The Court finds that the ALJ applied the correct legal standard to Nurse Practitioner Miller's medical source statement. Further, the Court finds that the abilities to reach frequently in all directions, including overhead, and to push and pull frequently with the left extremity, as determined in Plaintiff's RFC, was supported by substantial evidence, including medical evidence and Plaintiff's hearing testimony.

Plaintiff next argues that the ALJ erred by not adopting the opinion of Dr. Ersno Eromo, Plaintiff's treating orthopedic surgeon, that Plaintiff is not able to engage in repetitive flexion, extension, or rotation of the cervical spine. *See* Dkt. No. 11. Plaintiff states that the ALJ acknowledged that these limitations were consistent with objective medical evidence, but the RFC, as determined by the ALJ, did not include these limitations. *See id.* Ostensibly, Plaintiff's argument is that rejecting this portion of Dr. Eromo's opinion without any explanation was a failure to properly apply the treating physician rule.

An ALJ may refuse to consider a treating physician's opinion only if he or she is able to set forth good reason for doing so. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec*., 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"). When an ALJ refuses to assign controlling weight to a treating physician's opinion, he or she must consider a number of factors to determine the appropriate weight to assign, including: (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the

opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

The Court notes that the ALJ in the present case engaged in a thorough review of the medical evidence submitted, but did not identify clearly her application or analysis of the treating physician rule despite assigning multiple weights to Dr. Eromo's opinions. *See* T. at 24-32. Although this error can require remand to the ALJ, "[r]emand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal quotation marks omitted) (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)); *see also Brogan-Dawley v. Astrue*, 484 Fed. Appx. 632, 634 (2d Cir. 2012).

The Court's review of Plaintiff's medical records from his treating orthopedic surgeons, Drs. Eromo, Christopher T. Gorzynski, and Catherine Shin at Columbia Memorial Bone and Joint indicate that Plaintiff received orthopedic care and treatment during the period of January 10, 2012 through February 20, 2013. *See* T. at 275-96, 356-75. Dr. Eromo primarily provided medical care and treatment for Plaintiff's subjective neck pain. *See id.* Dr. Gorczynski primarily treated Plaintiff for reported neck and left shoulder pain. *See id.* Dr. Shin performed a right ulnar nerve decompression and transposition to alleviate Plaintiff's numbness in his right hand. *See id.* at 365-66.

From January 2012 through February 2013, both Drs. Eromo and Gorzynski stated at each examination that Plaintiff has full range of motion of his neck/cervical spine on flexion,

9

extension, lateral bending, and lateral rotation, with two exceptions. *See id.* at 375-96, 356-75. In early January 2012, Plaintiff reported to Dr. Gorzynski that he has some pain when he touches his chin to his left shoulder, *see id.* at 301, but, two weeks later, Plaintiff did not have pain with a full range of motion of the cervical spine. *See id.* at 299. Also, Plaintiff had limited range of motion of his neck at one visit with Dr. Eromo on November 2, 2012, but, on December 17, 2012, Plaintiff's neck was noted to have a full range of motion without pain. *See id.* at 275-76, 362-63. Dr. Eromo also noted, at each of Plaintiff's eight visits from January 2012 through February 2013, that Plaintiff did not have any tenderness to palpation over the cervical, thoracic, or lumbar spine, and that Plaintiff has a full range of motion in both his upper extremities, including the shoulders, elbows, wrists, and forearms. *See id.* at 375-96.

In a screening assessment for the county department of social services, dated November 2, 2012, Dr. Eromo stated that Plaintiff was temporarily restricted from repetitive flexion, extension, or rotation of the cervical spine. *See id.* at 337. Dr. Eromo explicitly indicated that he expected these restrictions to last from one to three months, and he specifically indicated that Plaintiff was not referred for SSI screening. *See id.* at 337. Four months later, Dr. Eromo completed a medical source statement for the Social Security Administration, dated March 7, 2013, which stated that Plaintiff could not lift or carry more than twenty pounds occasionally and ten pounds frequently. *See id.* at 376. Dr. Eromo also found that Plaintiff could reach overhead, reach in all other directions, handle, finger, feel, push, and pull frequently with his left hand and occasionally with his right hand – taking into consideration recent nerve decompression surgery on his right arm by Dr. Shin. *See id.* at 378. Dr. Eromo further opined in the medical source statement that Plaintiff could climb stairs, ramps, ladders, and scaffolds as well as balance, stoop, kneel, crouch, and crawl continuously. *See id.* at 379.

Based upon a review of the administrative record, the Court finds that Dr. Eromo's medical opinions together with the medical records more than substantially support the RFC. The limitations sought by Plaintiff can not be supported by the evidence here, and a remand for a clearer application of the treating physician rule could only result in the same finding. Therefore, any legal error in applying the treating physician rule to Dr. Eromo's medical opinions did not effect the RFC.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: June 24, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge